Pia DENNIS, Plaintiff,

v.

R. W. HANDLEY, d/b/a General Loan Co., General Loan & Sales Co., and Best Loan & Sales, and Howard J. Lindsey, d/b/a General Loan Co., General Loan & Sales Co., and Best Loan & Sales, Defendants.

Civ. A. No. 77–G–1403–S.

United States District Court, N. D. Alabama, S. D.

June 30, 1978.

Edward F. Still and Judith S. Crittenden, Birmingham, Ala., for plaintiff.

Charlie D. Waldrep, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

This cause under the Truth in Lending Act is before the court on defendants' amended motion for summary judgment and plaintiff's motion for summary judgment as to all issues save those dealing with the award of attorneys' fees.

The undisputed facts are as follows: On January 5, 1976, plaintiff pawned a diamond ring with defendant Lindsey for $200.00. Plaintiff received a pawn ticket in the following form:

---

No. 3009                                                                    $_____

GENERAL LOAN CO.
1807 3rd Avenue North

Birmingham, Ala. _____ 19 ____

This Certificate entitles holder to _____

_____ on surrender of
this Ticket and payment of $_____ on or before _____ 19 ____

Disclosures: Lender holds property as a pledge. Default charges continue same as FINANCE CHARGE.

Loan $_____          FINANCE CHARGE $_____

Total of Payments $_____
ANNUAL PERCENTAGE RATE _____ %

The holder of this Ticket waives all right and title to the above described property if not redeemed on above date, also all rights given him under sections 5290 to 5295 Civil Code of Alabama, and section 7517 Criminal Code of Alabama, or any other law statute or constitution whereby _____ he could claim said property or damages.

Name_____          GENERAL LOAN CO.
Address_____     By:_____
This Ticket Can be Renewed          Not Responsible for Fire or Theft

---

Under the contract plaintiff could renew the loan each month upon payment of the $20.00 accrued interest.

Plaintiff renewed the loan from time to time, until May 1977, when she defaulted. On October 17, 1977, plaintiff redeemed the ring upon payment of $600.00, $200.00 principal and $400.00 in finance charges. Upon each renewal and upon redemption, plaintiff received only a receipt in the following form:

General Loan & Sales Co.
   224 No. 18th Street
   Phone 251-1458
Birmingham, Ala. 35203

Next Due Date

Date_____ 197_____

RECEIVED
FROM_____

_____Dollars  $_____

For_____

Amt. of Acct.  $_____

Amount Paid    $_____

Balance Due    $_____

GENERAL LOAN & SALES CO.

By_____

---

Regulation Z, 12 C.F.R. § 226.8(j) reads: "If any existing extension of credit is refinanced, . . . such transaction shall be considered a new transaction subject to the disclosure requirements of [Regulation Z]." Each renewal, therefore, constituted a new transaction, and defendant may be held liable for a separate statutory penalty upon failure to make the required disclosures with each renewal. *Thomas v. Myers-Dickson Furniture Co.*, 479 F.2d 740 (5th Cir. 1973). *Turner v. Firestone Tire & Rubber Co.*, 537 F.2d 1296 (5th Cir. 1976), which held that each monthly statement of account does not constitute a separate transaction, is distinguishable from the present situation in that *Turner* involved a single account payable in installments, while the present case involves a separate loan made upon each renewal.

■ By 15 U.S.C. § 1640(e), actions to enforce civil penalties under the Truth in Lending Act may be brought within one year from the date of violation. Five renewals and the final redemption were made within the year preceding the filing of the complaint in this action and are thus properly in issue.

■ Regulation Z, 12 C.F.R. § 226.8(d)(1) requires that the amount of credit made available to a customer be disclosed by using the terms "amount financed." These terms do not appear on the five receipts in issue. Defendant thus failed to make the required disclosures.*

Viewing each renewal as a separate transaction, five loans were made within the one-year limitations period. The first four involved finance charges of under $50.00, so defendant incurred liability for the statutory minimum of $100.00 on each of these loans. The last loan involved a finance charge of $400.00, so defendant is liable for a statutory penalty of $800.00 on that loan. The total penalty to be awarded is, therefore, $1,200.00. 15 U.S.C. § 1640(a).

■ Defendant argues that plaintiff is not a "customer" within the meaning of Regulation Z and that the transaction is, therefore, outside the scope of the Truth in Lending Act. Regulation Z, 12 C.F.R. § 226.2(u) defines "customer" as "(1) a cardholder or (2) a natural person to whom consumer credit is offered or to whom it is or will be extended, and includes a comaker, endorser, guarantor, or surety for such nat-

---

* Though this action is against both R. W. Handley and Howard J. Lindsey, it appears that Handley is merely an employee of Lindsey and that any recovery due plaintiff is properly to be awarded against Lindsey.

ural person who is or may be obligated to repay the extension of consumer credit." The issue thus presented is whether plaintiff had an obligation to repay.

Defendant first contends that there is no obligation to repay because neither the pawn ticket nor the receipt recite a promise to repay. The court notes first that the parol evidence rule presents no bar to showing a promise to repay because the instruments are inherently ambiguous. *Parker v. McGaha*, 294 Ala. 702, 321 So.2d 182 (1975); *Drake v. Goree*, 22 Ala. 409 (1853). The court notes, second, that a valid promise to repay a loan may be oral; it need not be written.

■ Defendant next points to defendant's affidavit in which he stated that there is no obligation to repay. The statement constitutes a legal conclusion and is thus illegal evidence, improper for the court's consideration. Rule 56(e), Federal Rules of Civil Procedure.

Though apparently there are no Alabama cases directly in point, there is strong authority indicating that plaintiff had an obligation to repay and that pawn transactions are covered by the Truth in Lending Act.

Two Federal Reserve Board letters (July 17, 1969 and September 18, 1969), an F.T.C. informal staff opinion (August 18, 1969), and an unpublished decision (*Gilensons v. Twaddle*, 74–223 (D.N.M.1974)) have held pawnbrokers subject to the Act. Section 8–1–80, Code of Alabama 1975, regulating pawnbrokers, recites that on violation of the section, the pawnbroker "forfeits the debt *and* all right to the security, . . ." [Emphasis added.] Logically, if there were no obligation to repay, then there would be no debt to forfeit. The original pawn ticket used the terms "lender," "pledge," "default," "finance charge," and "loan." Black's Law Dictionary defines "pawnbroker" as "[a] person whose business is to lend money, usually in small sums, on security of personal property deposited with him or left in pawn." (Page 1284.)

■ Alabama, by Section 1–3–1, Code of Alabama 1975, has adopted the English common law insofar as it is not superseded by other Alabama law. The English common law defined a pawn transaction as one in which goods are delivered to another as security for money borrowed. *Coggs v. Bernard*, 2 Ld.Raym. 909, 913, 92 Eng.Rep. 107 (1790). The authority is thus persuasive, if not controlling, that plaintiff incurred a debt which she was obligated to repay and that the transaction is within the Truth in Lending Act.

That transactions such as those in issue should, on principle, be covered by the Truth in Lending Act, is apparent from the peculiar facts of this case. The plaintiff paid $880.00 for a $200.00 loan over a period of less than two years. To hold pawnbrokers immune from the Truth in Lending Act would be to withhold protection from an area where it is most sorely needed. For the foregoing reasons, the court is of the opinion that defendants' motion for summary judgment is due to be denied and that plaintiff's motion for summary judgment is due to be granted.