SouthTrust Bank of Dothan, N.A. ("SouthTrust"), sued Robert Dixon for payment on a promissory note that he had co-signed with Gary and Karen DeKay, which was in default. Dixon counterclaimed against SouthTrust and filed a third-party complaint against SouthTrust's chief executive officer, Pierce Flatt, alleging fraud. Prior to trial on SouthTrust's suit on the debt, the trial court entered summary judgment for SouthTrust and Flatt on the fraud claim; Dixon appealed. We reverse.
Karen and Gary DeKay wanted to purchase Louise Interiors, Inc., from its owner. Initially the DeKays attempted to finance their purchase of the business themselves through SouthTrust. Flatt advised the DeKays that they would need someone with more collateral to co-sign with them on the promissory note. The DeKays approached Robert Dixon about helping them to finance the purchase of the business. After some initial discussions with Flatt regarding what financing conditions would be acceptable, Dixon agreed to help the DeKays finance the purchase of the business.
On September 17, 1980, Dixon and the DeKays met with Flatt, at Flatt's SouthTrust office, for the purpose of executing the promissory notes, personal guarantees, and security agreements related to financing the purchase of Louise Interiors, Inc. Flatt handed Dixon various documents, including two promissory notes, a security agreement, and a personal guaranty agreement in favor of SouthTrust. These documents listed as security for the loan the inventory, the accounts receivable, all furniture and fixtures, and the stock of Louise Interiors, Inc., as well as certain of Dixon's certificates of deposits. These documents, however, did not contain any mention of what, if any, of the DeKays' personal property secured the loan.
We note that the facts are disputed regarding what was said between Dixon and Flatt about the use of the DeKays' personal property as security. Because this is an appeal from a summary judgment, all doubts concerning the existence of a genuine issue of material fact will be resolved in favor of the nonmovant, Dixon. Kizziah v. Golden Rule Ins. Co.,536 So.2d 943, 945 (Ala. 1988). Dixon alleges that he planned only to invest in the business, not to manage it. Dixon also alleges that he told Flatt that he would co-sign the notes only if the DeKays used a significant amount of their personal property as security for the financing. Dixon explained to Flatt that his reason for insisting upon this condition was that he did not want to enter into any financing agreement unless the DeKays put up a significant amount of their property as security to serve as an incentive for them to manage the business in a sound manner.
After reading over the loan documents, Dixon refused to sign them because the documents that Flatt had given him did not mention any of the DeKays' personal property as security for the loan. Dixon then asked Flatt specifically what personal property SouthTrust held as security for the loan. The alleged fraud in this case occurred when Flatt assured Dixon that SouthTrust held the DeKays' homes, automobiles, boat, jewelry, furs, and antiques as collateral. Dixon claims that he then signed the loan documents, in reliance upon Flatt's assurance that SouthTrust had indeed secured the loan with those items. However, SouthTrust had not secured the loan with any of the DeKays' personal property. Dixon alleges that the only reason he signed the documents was Flatt's assurances that the loan was secured with the DeKay's personal property.
Subsequently, Louise Interiors, Inc., ceased doing business and the note went into default. The assets of Louise Interiors, Inc., were sold at a liquidation sale, pursuant to the security agreement executed by Flatt, Dixon, and the DeKays on September 17, 1980. The proceeds derived from that sale, and the certificates given by Dixon as security, were insufficient to satisfy the debt. SouthTrust then called upon Dixon and the DeKays to pay the balance due on the note. After they refused *Page 708 
to do so, SouthTrust sued them in the Circuit Court of Houston County.
Shortly thereafter, the DeKays filed a suggestion of bankruptcy in the trial court, and they were later dismissed from the suit. Dixon filed a counterclaim against SouthTrust, alleging that Flatt, as agent for SouthTrust, had fraudulently induced him to sign the loan documents. Dixon also filed a third-party complaint against Flatt personally. SouthTrust and Flatt moved for summary judgment on three grounds: First, that the statute of limitations barred Dixon's fraud claim; second, that evidence of Flatt's representations was inadmissible as parol evidence; and third, that Dixon's reliance on Flatt's representations was unjustified.
The trial court entered summary judgment in favor of SouthTrust and Flatt, without stating its reasons, and certified the judgment as final pursuant to Rule 54(b), A.R.Civ.P. This appeal followed.
Because Dixon's claims were pending on July 11, 1987, the applicable standard of review is the "scintilla rule." Ala. Code 1975, § 12-21-12. Summary judgment is proper only where there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the moving party. Kizziah v. Golden Rule Ins. Co.,536 So.2d 943 (Ala. 1988). Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the nonmovant must show that there is at least a scintilla of evidence in his favor. Rutley v. Country Skillet PoultryCo., 549 So.2d 82 (Ala. 1989).
Prior to January 9, 1985, the statutory period of limitations applicable in a fraud action was one year, as provided by Ala. Code 1975, § 6-2-39.[1] A claim for fraud accrues at the time of "the discovery by the aggrieved party of the fact constituting fraud." § 6-2-3. Dixon signed the loan documents on September 17, 1980. However, the evidence in the record would support a finding by a jury that Dixon learned that SouthTrust had no security interest in any of the DeKays' personal property only after the DeKays had filed for bankruptcy in June 1982. Therefore, a jury could have found that Dixon did not discover the facts constituting the fraud until June 1982, and that the statutory limitations period did not begin to run until that date. Dixon filed this fraud claim on September 26, 1982. Consequently, a jury could find that Dixon's fraud claim was filed well within the one-year period allowed by the statute of limitations.
SouthTrust and Flatt also argue that the parol evidence rule prohibits introduction of any evidence of Flatt's alleged misrepresentations. Dixon's counterclaim and third-party complaint allege that Flatt fraudulently induced him into signing the loan documents. Under Alabama law, an action alleging fraud in the inducement is an action in tort, and in such a case the parol evidence rule does not apply. InRamsay Health Care, Inc. v. Follmer, 560 So.2d 746,748 (Ala. 1990), this Court stated that in Alabama the parol evidence rule applies to actions in contract and not actions in tort, and that parol evidence is admissible to show that a written agreement was procured by fraud. Id. at 748.
We have long made this distinction between tort and contract actions. The law in Alabama concerning the admissibility of evidence regarding fraudulent representations employed to obtain assent to a contract has been correctly stated as follows:
 "On the issues of whether a contract is void, voidable or reformable because of illegality, fraud, mistake or any other reason and whether the parties assented to a particular writing as the complete and accurate integration of their contract, there is no parol evidence rule to be applied. On these issues no relevant evidence, parol or otherwise, is excluded. *Page 709 
No written document is sufficient, standing alone, to determine any one of them, however long and detailed it may be. No one of the issues can be determined by mere inspection of the written document. See 3 A. Corbin Contracts, § 573 at 630 (1960). Accord, Battery Steamship Corp. v. Refineria Panama, S.A., 513 F.2d 735 (2d Cir. 1975)."
Richard Kelly Chevrolet Co. v. Seibold, 363 So.2d 989,993 (Ala.Civ.App. 1978) (emphasis added). See Crispell v.Sunbelt Chrysler Plymouth, Inc., 544 So.2d 939 (Ala. 1989); and Nelson Realty Co. v. Darling Shop of Birmingham,Inc., 267 Ala. 301, 101 So.2d 78 (1957).
The law in Alabama has traditionally allowed an aggrieved party wide latitude in proving fraud. The public policy behind this rule is that a party who has been the victim of fraud should not be denied redress simply because he justifiably relied upon the representations of someone who turned out to be misrepresenting the facts. Dixon's evidence regarding SouthTrust's representations is therefore not barred by the parol evidence rule.
SouthTrust and Flatt also argue that Dixon could not have justifiably relied upon any of Flatt's alleged representations because they were contrary to the documents that Dixon signed. In Hickox v. Stover, 551 So.2d 259 (Ala. 1989), this Court set forth the standard by which a person's reliance on a fraudulent representation will be assessed:
"In light of modern society's recognition of a standard of business ethics that demands that factual statements be made carefully and honestly,
 " '[r]eliance should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." ' "
Id. at 263 (quoting Southern States Ford, Inc. v.Proctor, 541 So.2d 1081, 1092 (Ala. 1989) (Hornsby, C.J., concurring specially). This Court has abandoned the standard of "reasonable reliance," whereby a party making a false statement was not liable in a fraud action if the person defrauded had not acted "reasonably" in relying on the fraudulent statement — i.e., if the plaintiff, having had reason to suspect a fraud, had not investigated to ascertain the truth of the statement.
In this case none of the documents that Dixon signed purported to even address the issue of what, if any, of the DeKays' personal property secured the loan. Flatt's representations could not have been patently or obviously false because there was nothing in the documents to contradict his representations. Therefore, Dixon could have justifiably relied upon Flatt's representations concerning the use of the DeKays' personal property as security for the loan in determining whether to enter into the financing arrangement. We conclude that all of the alleged misrepresentations are material and that they are admissible as to Dixon's fraud claim. Based on the foregoing analysis, we reverse the grant of partial summary judgment in favor of SouthTrust and Flatt and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
JONES, SHORES, ADAMS and KENNEDY, JJ., concur.
HOUSTON and STEAGALL, JJ., dissent.
[1] Effective January 9, 1985, fraud actions were transferred to the two-year statute of limitations. Ala Code 1975, §6-2-38.